Donkin, Ch.
delivered the opinion of the Court.
The petition sets forth, among other things, that the petitioner, Ann Maner Robert, the executrix of John H. Robert, deceased, has in possession about fifty-four negroes which have been heretofore assigned to her co-petitioner, Elizabeth Ann, as her share of the residuary legacy of the testator, and of the portion of her deceased sister, Sarah Isabella, and that she has also money arising from the income of her property, and a plantation purchased for her, and in her name, out of the said income.
The order proposed, and which the Chancellor declined to grant, was that Dr. Edward Riley, a citizen of Glynn County, in the State of Georgia, should be admitted a trustee under the will of John H. Robert, for the petitioner, Elizabeth Ann, and that Mrs. Ann Maner Robert transfer the property in her hands, as trustee under the will, to the'said Edward Riley, and be discharged.
The decretal order does not state the grounds on Avhich the Chancellor declined to execute the authority vested in the Court, by the Act of 1795, but they may be well understood from the written argument, submitted by the Solicitors, on behalf of the petitioners.
The only inquiry for this Court, is whether, under the circumstances of the case, the discretion of the Chancellor was properly exercised in refusing the motion.
The argument affirms that Dr. Riley being a gentleman of high respectability, it was the duty of the Court to have made the substitution, although he was resident in a foreign jurisdiction, and without requiring security for the faithful discharge of his duties.
The case of Meinertzhaegon v. Davis, recently decided by Mr. Vice Chancellor Knight Bruce, (a report of which was furnished by the Counsel,) shows very clearly the general understanding and practice, in Westminster Hall, on this subject. It is not too much to say that the general correctness of Mr. Lee’s position was not questioned, to wit: that “ nothing could be more contrary to the principles of the Court of Chancery, in England, than the appointment of Americans, or any other foreigners, to execute and be responsible for the execution of the trusts of an English settlement.” In that case the settlement was executed in England, but the trustees, by the terms of the deed, had'authority to substitute other trustees in their place, and they had also authority to invest the lands in American securities. The husband was a citizen of *89 Virginia, temporarily a resident in London. He, with his family, afterwards returned to Virginia, and the original trustees, under the power vested in them by the deed, substituted three Virginia gentlemen iu their place, transferred the funds to one of them then in London, and the funds were after-wards invested in securities, in America, in the name of the three substituted trustrees. So stringent is the English rule on the subject, that eminent counsel advised that the original trustees were responsible, because they had substituted foreigners in their place, and Mr. Knight Bruce remarks, “ it is impossible to say that doubts and difficulties on the subject, might not reasonably have suggested themselves to any counsel, or to any adviser.” The original trustees, in England, had been advised to demand an indemnity from the husband. “This difficulty was suggested,” says the Vice Chancellor — “the question whether the power of appointing new trustees had been properly exercised — a difficulty, at which, I repeat, I do not at all wonder, presenting itself to the minds of the advisers of the trustees, and that circumstance produced this paper” of indemnity. After commenting on the special clauses of the settlement, and particularly the authority to invest in American securities, and the condition of the parties, the Vice Chancellor adopted the conclusion that “ whatever might be the general rule, the course pursued was, under the circumstances, proper and justifiable.”
yes. Jr. 243. ,
iumkiá. °~
It is difficult to say that the motion to reverse the order of the Circuit Court derives support from this opinion of Vice Chancellor Knight Bruce. But it is valuable as presenting a more full and satisfactory discussion of the subject, in 'Westminster Hall, than is found in other decided cases. But a single expression of Lord Thurlow, in the Attorney General v. The City of London, indicates the gieat objection to the appointment of a foreign trustee. It is said he was moved by the consideration that, if the Court were to look to the execution of the trust, it ought to have persons bound to discharge those trusts liable to its jurisdiction. In that case it was proposed to appoint, or rather to continue, a foreign corporation as trustees.
It was successfully objected that William and Mary College, in Virginia, which had hitherto disbursed the trust funds, was, by the establishment of American Independence, emancipated from the control of the Court of Chancery in England.
Although Mr. Mansfield and Mr. Mitford represented that the “ application of the money could be managed as well now as before, by accounts properly transmitted to the officer of the Court.” But, said the Lord Chancellor, “ where is the scire facias in case of misbehaviour?”
Exparte Mayrant is an authority of the Appeal Court for *90 saying that a trustee, appointed or substituted by the Court under the Act of 1795, and receiving funds, is bound to account to this Court.
It is true that the condition of our country has rendered it both expedient and necessary to introduce some modification in the administrative practice of the Court, while the proximity of so many independent States, the facility of intercourse, as well as the migratory disposition of their inhabitants, demand some relaxation of the rules; it is rendered less objectionable in consequence of the identity of language, and homogeneous character of the laws and institutions of the several States. An administrator is sometimes appointed, who is resident m North Carolina or Georgia, although the domicil of the intestate and all the assets maybe within the jurisdiction of the Courts of South Carolina — so, I suppose, under special circumstances, a guardian may be appointed who is a non-resident; but in all such cases, the Court of Ordinary, or the Court of Equity, as the case may be, requires security to be given that the foreign administrator, or guardian, will discharge his duty faithfully, and the sureties must be persons amenable to the jurisdiction of the Court.
The refusal of the Chancellor' to substitute a trustee resident in Georgia, without security, presents no ground for the revision of his judgment; should it be deemed desirable to have an order for the appointment of the trustee, on giving security for the faithful discharge of his duties, parties may take a reference to one of the Masters, for the purpose of ascertaining the value of the property, and the amount of the bond to be taken by the Master.
The whole Court concurred.

Appeal dismissed.